# EXHIBIT 1



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Nikki Webber Allen
_____
                                    Plaintiff

                    vs.                                    Case Number   **2015 CA 003531 B**

TV One, LLC
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Tracey L. Brown
_____
Name of Plaintiff's Attorney

233 Broadway, 5th Fl                    By _____
Address

New York, NY 10279

(212) 553-9165                          Date   **05/13/2015**
_____
Telephone

Clerk of the Court

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction:    Để có một bài dịch, hãy gọi (202) 879-4828

한국어 번역을 원하시면, (202) 879-4828로 전화하십시오.    ንግለ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation.
Vea al dorso la traducción al español.

# EXHIBIT 2

Filed
D.C. Superior Court
05/18/2015 18:59PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

------------------------------------------------X

NIKKI WEBBER ALLEN,
1627 Myrtle Street NW
Washington, DC 20012

Civil Action No. 2015 CA 003531 B

                    Plaintiff,

**COMPLAINT**

-against-

TV ONE, LLC,
1010 Wayne Avenue
Silver Spring, MD 20910

**Jury Trial Demanded**

CATHERINE HUGHES,
1909 Blue Waters Farm Lane
Pasadena, MD 21122

100 Saint Paul Street
Baltimore, MD 21202

and ALFRED LIGGINS,
3227 Idaho Avenue, NW
Washington DC 20016

                    Defendants.

------------------------------------------------X

    Plaintiff Nikki Webber Allen (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, THE COCHRAN FIRM, as and for her Verified Complaint in the action against Defendants TV ONE, LLC (hereinafter referred to as "TV One"), ALFRED LIGGINS and CATHERINE HUGHES (collectively referred to as "Defendants" herein), respectfully sets forth and alleges that:

    1.    This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices taken against the Plaintiff, including Defendants' discriminatory treatment, harassment, and unlawful retaliation against

Plaintiff due to her gender and her repeated complaints of discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000 et seq.

2.      During Plaintiff's employment at TV One, Defendants repeatedly subjected the Plaintiff to unlawful sexual harassment, discrimination and a hostile work environment based on her gender, as well as unlawful retaliation and emotional distress.

3.      Defendants' conduct was knowing, malicious, willful, wanton and/or showed a reckless disregard for Plaintiff. As a result, the Plaintiff has suffered and continues to suffer economic and non-economic damages, permanent harm to her professional and personal reputation as well as severe mental anguish and emotional distress.

## JURISDICTION & VENUE

4.      This Court has jurisdiction over this matter pursuant to the concurrent jurisdiction between state and federal courts in Title VII claims. See Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820 (1990). The amount in controversy exceeds the jurisdictional limits, if any, that may apply.

5.      The venue of this action is based upon the fact that the Plaintiff and one of the individually-named Defendants reside within this judicial district.

## PROCEDURAL REQUIREMENTS

6.      Plaintiff filed a charge of discrimination and retaliation with Equal Employment Opportunity Commission ("EEOC"), Charge No. 570-2014-01822, against the Defendants on August 5, 2014.

7.      Plaintiff commenced this action within 90 days after receipt of her Right to Sue letter from the Equal Employment Opportunity Commission (E.E.O.C.) dated February 13, 2015, and mailed to Plaintiff on February 18, 2015.

8.      All conditions and requirements precedent to the commencement of this action have been complied with.

## PARTIES

9.      The Plaintiff is a female residing in the District of Columbia. At all relevant times, the Plaintiff met the definition of an "employee" under all applicable statutes.

10.     Defendant TV One is a corporation with its principal place of business at 1010 Wayne Avenue, Silver Spring, Maryland 20910. At all relevant times, Defendant TV One met the definition of an "employer" under all applicable statutes.

11.     At all relevant times Defendant Alfred Liggins was a senior executive at TV One and has participated directly in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

12.     At all relevant times Defendant Catherine Hughes was a senior executive at TV One and has participated directly in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

## FACTUAL ALLEGATIONS

### *Commencement of Plaintiff's Employment at TV One*

13.     While the Plaintiff was working in Los Angeles, California as a freelance television producer, Defendant Liggins, Chief Executive Officer and President of TV One, contacted the Plaintiff for help in producing a video demo reel for TV One, which was in its nascent phase at the time. The Plaintiff agreed to help Defendant Liggins with the assurance that she be hired as a staff producer at TV One if the network was ever launched.

14.     Defendant Liggins readily accepted the Plaintiff's terms. The Plaintiff, along with another freelance producer, collaborated and conceptualized content for the video demo

3

reel.  The Plaintiff booked noteworthy talent, such as professional athlete Shaquille O'Neal and actor Richard T. Jones, to appear on the video demo reel.

15.     As a result of the video's overall success, the Plaintiff was hired to join TV One as the Director of Talent Relations and Casting when the network launched in 2004.

16.     In this capacity, the Plaintiff was responsible for overseeing casting and negotiating talent deals on behalf of TV One as well as identifying and securing talent for all in house initiatives and campaigns.  In addition, the Plaintiff was charged with working as an executive producer for various TV One shows, booking talent for TV One shows, including TV One-on-One, hosted by TV One's founder, chairperson, and board member, Catherine Hughes, who is also Defendant Liggins' mother.

*Examples of the Hostile Work Environment Perpetuated by Defendant Hughes*

17.     Immediately upon starting at TV One, the Plaintiff was subjected to a pervasive pattern of sexual harassment and gender discrimination by Defendant Hughes.

18.     Defendant Hughes' pervasive harassment occurred as early as October 2004 when the plaintiff accompanied Defendant Hughes to Chicago, Illinois for a work event.  While on this business trip, the Plaintiff and Defendant Hughes went on a walk at Defendant Hughes' request and went into a few stores to browse.  Defendant Hughes offered to purchase items for the Plaintiff, which the Plaintiff refused.

19.     The second time the Plaintiff declined Defendant Hughes' offer to purchase items for her, Defendant Hughes stated, "I don't know why you won't let me pay for anything.  I'm going to be your mother one way or another.  Either you will marry Alfred [Defendant Liggins] or I will marry your father and be your stepmother."  Defendant Hughes then proceeded to rant about the Plaintiff's father's looks and about the time period when she was a student of his at

4

Howard University. Plaintiff's father, retired District of Columbia Superior Court Judge Paul Webber, taught at Howard University School of Communications.

20.     The Plaintiff's parents were, at the time, and still are married.

21.     During this same business trip, Defendant Hughes notified the Plaintiff that she was planning a birthday party for the Plaintiff in Las Vegas, Nevada. Defendant Hughes told the Plaintiff that instead of flying back home, they, along with another colleague, were going to Las Vegas, Nevada to celebrate her birthday.

22.     The Plaintiff was uncomfortable with this impromptu invitation and with the idea of spending additional time with Defendant Hughes. Thus, the Plaintiff told Defendant Hughes that she had to promptly return to Washington, D.C. to spend her birthday with family.

23.     Defendant Hughes became upset with the Plaintiff for declining her invitation to Las Vegas, Nevada.

24.     On a later occasion, Defendant Hughes sternly commented to the Plaintiff that she does not know why she has not married Defendants Liggins yet. Defendant Hughes then stated that the Plaintiff was old and that her babies would likely be "retarded." The Plaintiff was completely humiliated by this comment.

25.     The Plaintiff was left uncomfortable and fearful of her job security because of Defendant Hughes' unabashed harassment since she did not have any intention of marrying Defendant Liggins or otherwise engaging in a romantic/sexual relationship with him.

26.     In fact, after Defendant Hughes realized that the Plaintiff was not going to marry Defendant Liggins or otherwise engage in a romantic relationship with him, she began to baselessly attack the Plaintiff's job performance in an effort to sabotage her career at TV One.

27.     For instance, at TV One, staff members were often tasked with performing several roles and responsibilities in addition to those entailed in their job description.  Accordingly, the Plaintiff served as the Director of Talent and Casting, Executive Producer of two shows, and a talent booker for TV One-on-One.  On one occasion, the Plaintiff missed a taping for Defendants Hughes' show due to a scheduling conflict with a show that she was the executive producer of. After the show, Defendant Hughes publicly berated the Plaintiff in front of co-workers for missing her show taping due to the Plaintiff's obligations as executive producer on, *Living with Soul.*

28.     As the talent booker for Defendant Hughes' show, the Plaintiff consistently secured high profile celebrity interviews including with Usher, Terrence Howard, TD Jakes, Tyler Perry and Spike Lee.

29.     Despite the Plaintiff's overall success in booking major celebrities to appear on Defendant Hughes' show, Defendant Hughes continued to harass the Plaintiff.

30.     In 2006, Defendant Hughes demanded the Plaintiff book Denzel Washington to appear on her show while he was promoting the film, *Inside Man.*  The Plaintiff contacted his publicist and was notified that Mr. Washington was limiting his press appearances only to high profile media outlets and not partaking in long format sit down interviews during the movie's press tour.

31.     Instead, the Plaintiff scheduled an interview with Spike Lee, *Inside Man's* executive producer, to appear on Defendant Hughes' show.  However, Defendant Hughes was not satisfied with her efforts as she demanded that the Plaintiff personally ask Mr. Washington for an interview while in New York City during a press junket for *Inside Man.*

6

32.     Defendant Hughes made this request for the Plaintiff to directly ask a celebrity for an interview knowing that it was contrary to standard industry protocol. Standard industry protocol required the Plaintiff to make such a request directly with the celebrity's manager and/or publicist. Defendant Hughes knew that by asking the Plaintiff to directly approach Mr. Washington after his publicist already declined the invitation to appear on Defendant Hughes' show, the Plaintiff's professional relationship with highly renowned publicists in Hollywood like Mr. Washington's would be irreparably damaged.

33.     In an effort to comply with Defendant Hughes' directives and protect her reputation within the industry, the Plaintiff communicated Defendant Hughes' request to the film's publicist. She was directed to speak with Mr. Washington's publicist, which she did. Her request was denied a second time.

34.     Despite not having done anything wrong, except not date and/or marry her son, shortly after asking Mr. Washington's publicist for an interview, Defendant Hughes demanded the Plaintiff be terminated for incompetence. TV One's Chief Operating Officer, Jonathon Rodgers, intervened and prevented the Plaintiff's discriminatory termination.

*Defendant Liggins' Failure to Address the False Rumors Regarding His Relationship with the Plaintiff*

35.     The Plaintiff was also forced to endure false rumors, disparaging comments regarding her reputation, and a hostile work environment. For example, the Plaintiff's former supervisor, Lee Gaither, Senior Vice President of Programming, falsely told the Plaintiff's colleagues that Defendant Liggins and the Plaintiff were romantically involved. Mr. Gaither also told TV One staff members that the Plaintiff was only hired because she was sexually involved with Defendant Liggins.

7

36.    When the Plaintiff complained to Defendant Liggins about the false rumors, he told her that "at least the rumor makes me look good." Defendant Liggins failed to take any action to address the rumors.

37.    Defendant Liggins' failure to address the Plaintiff's complaints about the rumors created a hostile work environment and resulted in further sexual harassment. Moreover, the rumors were intensified when Defendant Hughes," Defendant Liggins' mother, publicly declared on multiple occasions that she wanted the Plaintiff and Defendant Liggins to marry. These comments were often made in front of the Plaintiff's colleagues, including her superiors and subordinates.

38.    Because of Defendant Liggins' failure to address the Plaintiff's complaints, several of the Plaintiff's colleagues and members of TV One's senior executive staff, including Jonathon Rodgers, former Chief Executive Officer, Mr. Gaither, Catherine Rose Pinkney, former Senior Vice President of Programming, Susan Banks, Executive Vice President of Marketing, and Toni Judkins, Plaintiff's former supervisor and Executive Vice President of Programing, openly discussed the rumors that the Plaintiff and Defendant Liggins were romantically involved.

39.    As a result, the working conditions the Plaintiff was forced to endure became oppressive. Despite having an illustrious fifteen years of experience in the industry, including winning two Emmy awards and having an extensive network of contacts with the top rated television producers, the underlying sentiment that the Plaintiff received was that she received the opportunity to work at TV One because of an alleged sexual relationship with Defendant Liggins and not because of her stellar qualifications.

8

40.     Thus, all of Plaintiff's accomplishments, hard work, demonstrated excellence, and reputation were undermined by the perception perpetuated by the Defendants that the only reason the Plaintiff was hired was because she was to marry Defendant Liggins, an individual she was claimed to be having an affair with.

### Plaintiff's 2008 Promotion

41.     After making several requests for a promotion, the Plaintiff finally received a well-deserved promotion in 2008 to Vice President of Talent Relations and Casting. However, in order to obtain this promotion, the Plaintiff was forced to climb through hoops that other employees, who had not been harassed or discriminated against, did not have to through. These hoops included, compiling a list of her accomplishments to Robert Buenting, then CFO from TV One, for his feedback on whether the budget allowed for her to receive a raise commensurate with the promotion she was seeking.

42.     After Mr. Buenting approved of her promotion request on the financial end, the Plaintiff next asked Ms. Pinkney, her then supervisor, for a promotion to Vice President for Talent Relations and Casting, based on her demonstrated successes, increasing level of responsibilities, and the fact that a senior level title would increase her opportunities of booking talent for TV One with major celebrities.

43.     Ms. Pinkney approved the Plaintiff's promotional request.

44.     Since her promotion in 2008, the Plaintiff was never provided any advancement opportunity within TV One despite her stellar work performance and proven successes.

### Defendant Hughes' Retaliation Against the Plaintiff for not Acquiescing to the Harassment

45.     Whenever Defendant Hughes came to the office, she exhibited mercurial, volatile, disruptive and abusive behavior toward the Plaintiff.

46.     As a result of the hostile work environment and discriminatory animus by the Defendants the Plaintiff forced to endure during her tenure at TV One, the Plaintiff began seeking therapy to help her cope with the stress and anxiety.

47.     In July 2011, during a farewell celebration for Mr. Rodgers, and shortly after the Plaintiff began dating her future husband, a man who was not Defendant Liggins, Mr. Rodgers warned the Plaintiff to be careful because Defendant Hughes was strategizing on how to terminate the Plaintiff.

48.     During the summer of 2012, the Plaintiff took approximately 10 days of approved vacation to get married and go on a honeymoon.  After the Plaintiff's honeymoon, she immediately went on required business travel for another week as the Plaintiff was responsible for managing the talent at the annual Essence Music Festival.

49.     When the Plaintiff returned to the office from her personal time and time working the Essence Music Festival, Defendant Hughes stopped by the Plaintiff's office to publicly chastise her for taking too much time off.

*Plaintiff's Complaints of the Defendants' Unlawful Actions*

50.     Between the period of June 2012 to December 2013, the Plaintiff made several complaints about the harassment she received from Defendant Hughes to the Plaintiff's supervisor, Monica Leal, Senior Vice President of Corporate Communications and Publicity.

51.     For example, the Plaintiff complained to Ms. Neal in early January 2013 after a high profile event, Television Critics Association, in Pasadena, California.  During this event, the Plaintiff was to oversee the entire talent activation for TV One's presentation; however, Defendant Hughes demanded the Plaintiff escort her to hair and makeup and stand near her throughout the event to accommodate her personal needs, such as holding her purse.  Thus, the

10

Plaintiff complained to Ms. Neal that because of Defendant Hughes' demand she act as her personal assistant, the Plaintiff was unable to perform the job that she was responsible for as the Vice President of Talent and Casting at the event.

52.     The Plaintiff also lodged a complaint of discrimination and sexual harassment, with Karen Wishart, General Counsel, who oversaw the Human Resources' department. Nothing was done to alleviate the unlawful treatment the Plaintiff was forced to endure.

*Plaintiff's Request to Relocate to Escape the Hostile Work Environment*

53.     In February 2013, in an effort to try and move outside the reach of Defendant Hughes' harassment as well as to expand the Plaintiff's position and the available resources needed to perform her job, the Plaintiff spoke with Defendant Liggins about relocating to the Los Angeles' office as it would allow her to meet and engage talent with greater regularity compared to the Silver Spring, Maryland Office.

54.     Defendant Liggins dismissed the Plaintiff's request. It was clear that Defendant Hughes was responsible for Defendant Liggins' outright refusal as she would never allow the Plaintiff to be outside her reach of harassment.

55.     It should be noted that the position held by Plaintiff before her wrongful termination is now in fact located in TV One's Los Angeles' office.

*Defendant Liggins' Falsely Insinuated that He was Romantically Involved with the Plaintiff*

56.     In January 2014, all of TV One's staff members were required to attend a meeting honoring the company's ten year anniversary. During this meeting, Defendant Liggins spoke about the inception of TV One and showed a video demo reel he used to pitch the idea of TV One to Comcast. While introducing the video demo reel, Defendant Liggins falsely stated that while he was on a business trip in Los Angeles, California, the Plaintiff joined him in his hotel

room to review the demo reel. This is grossly untrue and serves as an example of the discriminatory treatment the Plaintiff was forced to endure by Defendant Liggins as he refused to acknowledge the Plaintiff's contributions, but instead further fueled rumors that he and the Plaintiff were either romantically and/or sexually involved.

57. Throughout the Plaintiff's tenure at TV One, Defendant Liggins failed to share with staff members the details of Plaintiff's hiring and allowed such disparaging rumors regarding a purported sexual relationship with him to continue to undermine the Plaintiff's accomplishments and hard work.

### Additional Complaints of Discrimination Made by the Plaintiff

58. Immediately after the staff meeting, the Plaintiff complained to Ms. Neal about the discriminatory treatment she was blatantly subjected to by Defendant Liggins. Again, no action was taken to address the Defendants' pervasive harassment and discrimination of the Plaintiff.

59. In early June 2014, the Plaintiff lodged a complaint to Sharon Alston, Human Resources, about TV One's lack of comp time policy. The Plaintiff told Ms. Alston that her position required her to work most weekends during the summer as well as having to work seven straight days with no time off.

60. Thus, the Plaintiff notified Ms. Alston that during the weekends she was required to work, it was spent travelling and managing the needs of celebrities they were working with regardless of the time. In addition, the Plaintiff further complained that she was required to work on paid holidays that the rest of TV One staff members were able to take off and that when she was granted a comp day, it was done begrudgingly and the Plaintiff was still required to work from home.

61.     Ms. Alston did not take any action on the Plaintiff's behalf.

*The 2014 Annual Essence Music Festival and Plaintiff's Unlawful Termination*

62.     In June 2014, as part of a sponsorship deal with Walmart, TV One's biggest advertising client, TV One's talent was to make appearances at Walmart's initiatives, including an exclusive "R & B Divas" performance on the Walmart Stage for the annual Essence Music Festival.

63.     The 2014 Essence Music Festival was an event marked with significant tension for TV One because Defendant Liggins refused to pay the requisite sponsor fee. Thus, in an effort to circumvent the sponsor fee while maintaining a TV One presence, it was agreed between TV One and Walmart that TV One would allow Walmart to have an exclusive "R & B Divas" performance on its stage in exchange for promoting TV One's brand and allowing TV One to use Walmart's private party room for one evening during the festival.

64.     The Plaintiff's supervisor, D'Angela Proctor, informed her that Defendant Hughes' personal friend, Ayiko Broyard, who was not a TV One employee, wanted to book an "R & B Divas" performance on the McDonald's stage, one of Walmart's biggest competitors for brand sponsorship at the festival.

65.     Subsequently, the Plaintiff received an email from Ms. Broyard with her request. Following the talent department's protocol, the Plaintiff referred Ms. Broyard to the talent manager, Alison Threadgill, to coordinate with her on booking the performance as well as emailing her all the details required to book an appearance on behalf of McDonald's. Concerned about potentially jeopardizing TV One's critical advertising relationship with Wal-Mart, the Plaintiff consulted with Denise Bennett, TV One's account representative handling

13

Walmart, and the Plaintiff was informed that Walmart expected an exclusive "R & B Divas" performance. Walmart clearly expressed that if the exclusivity of the "R & B Divas" performance was jeopardized, their relationship with TV One would be at risk. By losing a relationship with Walmart, TV One would have incurred a significant loss to their detriment.

66.     Thus, the Plaintiff informed Ms. Threadgill that she needed to notify Ms. Broyard that TV One was unable to accommodate her request because of an existing agreement with Walmart.

67.     On Sunday, June 22, 2014, Defendant Hughes berated the Plaintiff on the phone for not obliging her friend's request. Despite the Plaintiff's efforts to explain to Defendant Hughes that she was protecting the company's important relationship with Walmart and following protocol by referring her friend to the talent manager, Defendant Hughes criticized the Plaintiff for not disregarding all protocol and procedure on account of her friend's request.

68.     Defendant Hughes concluded the phone conversation by demanding the Plaintiff be on a conference call at a specific time the following day. The Plaintiff notified Defendant Hughes that she was unable to do so because she was in Minnesota on an approved day off to spend time with her husband's family. Defendant Hughes continued to shout at the Plaintiff and told her, "I don't give a damn about your husband's family." Defendant Hughes then told another individual apparently present in the room with her that the Plaintiff was arrogant, incompetent and that she should be written up. Moreover, Defendant Hughes said in reference to the Plaintiff, "I don't know who the hell this girl thinks she is, but I am writing her ass up." After hearing this, the Plaintiff inquired if Defendant Hughes was addressing her directly, and Ms. Hughes hung up on her.

69. Defendant Hughes did not give the Plaintiff an opportunity to speak or to explain that she was going to be in Minnesota at the time Defendant Hughes sought to schedule the conference call because her father in law suffered a massive stroke.

70. During this entire call with Defendant Hughes, the Plaintiff was respectful, never raised her voice and behaved professionally, as she always has done throughout the course of her employment at TV One.

71. On or about June 23, 2014, the Plaintiff called Ms. Alston to complain about Defendant Hughes' discriminatory and retaliatory treatment. After being unable to reach her, the Plaintiff emailed her requesting that she contact her so they could discuss the continuing harassment that the Plaintiff was being subjected to by Ms. Hughes, including the June 22, 2014 phone call.

72. On or about June 24, 2014, Ms. Alston spoke with the Plaintiff by telephone where the Plaintiff gave her a full account of the incident and told her that Defendant Hughes' abusive and discriminatory behavior was in retaliation for not acquiescing to her harassment and her desire for me to marry her son. In addition, the Plaintiff recounted the years of abuse she endured by Defendant Hughes.

73. Moreover, the Plaintiff told Ms. Alston that despite Defendant Liggins' awareness of Defendant Hughes' abuse, he consistently refused to intervene or rectify the situation. In response, Ms. Alston informed the Plaintiff that Defendant Hughes has told various Radio One and TV One employees that the Plaintiff raised her voice at her, was abusive and insubordinate, and that she was being placed on administrative leave.

74.     When the Plaintiff inquired about the details of her leave and what her expectations should be, Ms. Alston notified the Plaintiff that a decision has not yet been made as the Defendants were seeking to conduct an investigation.

75.     Lastly, the Plaintiff asked Ms. Alston about Defendant Liggins' involvement in any of the decision-making regarding her employment status, and the Plaintiff was told that due to the special circumstance of this matter TV One was considering hiring a third-party to review the incident.

76.     On June 26, 2014, the Plaintiff lodged a written complaint of gender discrimination and harassment with Ms. Alston detailing the verbal complaint the Plaintiff made to her on June 24, 2014.

77.     Later that day, the Plaintiff was informed that her employment was terminated as of June 24, 2014. The termination letter that she received contained false and defamatory accusations against her, including that the Plaintiff was harsh, "loud, inappropriate, and disrespectful" to Defendant Hughes when in fact the Plaintiff never raised her voice or spoke inappropriately to Defendant Hughes while she yelled and berated the Plaintiff.

## FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Title VII)

78.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.     By the actions described above, the Defendants have intentionally discriminated against the Plaintiff on the basis of her gender (female), in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§1983, et seq. by denying her equal terms and conditions of employment, including but not limited to, subjecting her to disparate working

conditions, denying her the opportunity to work in an environment free of unlawful harassment and denying her compensation and other benefits given to similarly-situated colleagues.

80.     Defendants have discriminated against the Plaintiff on the basis of her gender in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of the Plaintiff by her supervisors.

81.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered monetary and/or economic damages, including but not limited to, loss of income and benefits for which she is entitled to an award of monetary damages and other relief.

82.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

83.     Defendants' unlawful and discriminations actions constitute malicious, willful and wanton violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000 et seq. for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

84.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.     Defendants have retaliated against Plaintiff, by inter alia, harassing her, threatening her, humiliating her, stripping her of important responsibilities, exposure and other

privileges of employment that are extended to other employees, and undermining her ability to effectively perform her job in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§1983, et seq. for her opposition to Defendants' discriminatory and harassing practices toward herself, and/or her participation in criticizing and lodging complaints about Defendants' discriminatory and harassing practices.

86.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered monetary and/or economic damages, including but not limited to, loss of income and benefits for which she is entitled to an award of monetary damages and other relief.

87.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, the Plaintiff has suffered mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

### JURY DEMAND

88.    The Plaintiff demands a jury trial on all causes of actions in this matter.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, and grants the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate Federal Law;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.  An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

D.  An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, emotional pain and suffering and other physical and mental injuries;

E.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest;

F.  An award of punitive damages, in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter;

G.  An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H.  Such other and further relief as the Court may deem just and proper.

19

Dated: New York, New York
     May 13, 2015

                              Respectfully Submitted,

                              THE COCHRAN FIRM

                              Tracey L. Brown, Esq. (DC Bar No. 450898)
                              Derek S. Sells, Esq. (DC Bar No. 420398)
                              Counsel for Plaintiff
                              233 Broadway, 5th Floor
                              New York, New York 10279
                              (212) 553-9165 (Tel No.)
                              (212) 227-8763 (Facsimile)
                              tbrown@cochranfirm.com
                              dsells@cochranfirm.com

CIVIL ACTION NO.:  2015 CA 003531 B

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISON

NIKKI WEBBER ALLEN
1627 Mytle Street NW, Washington, DC 20012

     -against-                        Plaintiff,

TV ONE, LLC.
1010 Wayne Avenue, Silver Spring, MD 20910

CATHERINE HUGHES
1909 Blue Waters Farm Lane, Pasadena, MD  21122
100 Saint Paul Street, Baltimore, MD 21202

and ALFRED LIGGINS
3227 Idaho Avenue NW, Washington, DC 20016

                          Defendants.

## SUMMONS AND VERIFIED COMPLAINT

## THE COCHRAN FIRM
Attorneys for Plaintiff

233 BROADWAY, 5TH FLOOR
NEW YORK, NEW YORK 10279-0003
(212) 227-9240

Service of a copy of the within                  is hereby admitted.

Dated:

                          _____

                          Attorneys for

## THE COCHRAN FIRM
Attorneys for Plaintiff

233 BROADWAY, 5TH FLOOR
NEW YORK, NEW YORK 10279-0003
(212) 227-9240

# EXHIBIT 3

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH
## INFORMATION SHEET

Nikki Webber Allen

Case Number: 2015 CA 003531 B

vs.

Date: 5-13-2015

TV One, LLC, Alfred Liggins and Catherine Hughes

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Tracey L. Brown | Relationship to Lawsuit |
| Firm Name: The Cochran Firm | ☑ Attorney for Plaintiff |
| Telephone No.: (212)553-9166   Six digit Unified Bar No.: 461898 | ☐ Self (Pro Se) |
| | ☐ Other: |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☐ 12 Person Jury
Demand: $_____    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar #: _____

---

NATURE OF SUIT:    *(Check One Box Only)*

### A. CONTRACTS

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 15 Special Education Fees

☐ 07 Personal Property
☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☒ 13 Employment Discrimination

### COLLECTION CASES

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass
☐ 06 Traffic Adjudication

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 09 Harassment
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED.

CV-496/Jan 13

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 04 Condemnation (Emin. Domain)
☐ 05 Ejectment
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf.
    Grants Consent
☐ 08 Quiet Title
☐ 09 Special Writ/Warrants
    (DC Code § 11-941)

☐ 10 T.R.O./ Injunction
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment
☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability
☐ 24 Application to Confirm, Modify,
    Vacate Arbitration Award
    (DC Code § 16-4401)

☐ 25 Liens: Tax/Water Consent Granted
☐ 26 Insurance/Subrogation
    Under $25,000 Consent Denied
☐ 27 Insurance/Subrogation
    Over $25,000
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)
☐ 26 Merit Personnel Act (OHR)
☐ 30 Liens: Tax/Water Consent Denied
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
    Certificate

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-1519 (a)]
☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a) (1).
    (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

_____
Attorney's Signature

5/13/15
_____
Date

# EXHIBIT 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Nikki Webber Allen
_____
Plaintiff

vs.

Catherine Hughes                                Case Number: **2015 CA 003531 B**
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Tracey L Brown
_____
Name of Plaintiff's Attorney

233 Broadway, 5th Fl
_____          By _____
Address
New York, NY 10279
_____

(212) 553-9165
_____          Date   **05/13/2015**
Telephone

如需翻译，请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오          የተርጓም አስፈልጎዎ (202) 879-4828 ይደውሉ

**IMPORTANT:** IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                      CASUM.doc

# EXHIBIT 5

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Nikki Webber Allen
_____
Plaintiff

vs.                                         Case Number   2015 CA 003531 B

Alfred Liggins
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either
personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive
of the day of service. If you are being sued as an officer or agency of the United States Government or the
District of Columbia Government, you have sixty (60) days after service of this summons to serve your
Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The
attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed
to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue,
N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on
Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on
the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment
by default may be entered against you for the relief demanded in the complaint.

Tracey L. Brown
_____
Name of Plaintiff's Attorney

233 Broadway, 5th Fl          By _____
Address
New York, NY 10279                                Deputy Clerk

(212) 553-9165                Date   05/13/2015
Telephone
如需翻譯, 請打電話 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     ត្រូវការ កែប្រែ សូមទូរស័ព្ទ (202) 879-4828  សូមអរគុណ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU
ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT
MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE
COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR
REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS
ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the
Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500
Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español.

FORM SUMMONS - Jan. 2011                                                      CASUM.doc

# EXHIBIT 6



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

NIKKI WEBBER ALLEN
Vs.                                          C.A. No.      2015 CA 003531 B
TV ONE, LLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once,** with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MAURICE ROSS
Date:  May 14, 2015
Initial Conference: 9:00 am, Friday, August 14, 2015
Location:  Courtroom 100
           500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc